# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BRANDON HEATH PHIPPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-0021** |
| **v.** | ) | **Judge Wiseman / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on January 10, 2007,[1] alleging that he had been disabled since September 19, 1980,[2] due to numbness in his back, neck, head, chest, hands, and legs. Docket No. 12, Attachment ("TR"), TR 92-95, 96-98, 131-134, 157-160. Plaintiff's applications were denied both initially (TR 29, 30) and upon reconsideration (TR 31, 32). Plaintiff subsequently requested (TR 59) and received (TR 62-66) a video teleconference hearing. Plaintiff's video teleconference hearing was conducted on June 25, 2009, by Administrative Law Judge ("ALJ") Jack Williams. TR 4-23. Plaintiff and vocational expert ("VE"), Joann Bullard, appeared and testified. *Id.*

On August 5, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 33-48. Specifically, the ALJ made the following findings of fact:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

    2.    The claimant has not engaged in substantial gainful activity since December 14, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.    The claimant has the following severe impairments: congenital heart disease; degenerative disk disease of the lumbar spine; depression; anxiety; and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

    4.    The claimant does not have an impairment or combination

---

[1] The ALJ notes that Plaintiff protectively filed DIB and SSI applications on December 14, 2006, alleging disability beginning December 14, 2006. TR 36.

[2] In a January 23, 2008 letter, Plaintiff's attorney Mark Walker notified ALJ James Sparks that Plaintiff was "amending his onset date to 12-14-06." TR 101.

of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can frequently lift and/or carry up to ten pounds. The claimant can occasionally lift and/or carry twenty pounds. The claimant can sit approximately six hours out of an eight hour workday. The claimant can stand and/or walk approximately six hours out of an eight hour workday. The claimant can occasionally bend/stoop. The claimant can perform simple, repetitive work, in low stress jobs. The claimant can perform jobs with superficial and minimal contact with others.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 19, 1980 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8.    The claimant has a "limited" to high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   The claimant has not been under a disability, as defined in

the Social Security Act, from December 14, 2006 through
the date of this decision (20 CFR 404.1520(g) and
416.920(g)).

TR 38-48.

On August 6, 2009, Plaintiff timely filed a request for review of the hearing decision. TR
88. On January 9, 2010, the Appeals Council issued a letter declining to review the case (TR 1-
3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil
action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and
1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon
the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and
testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the
extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the
administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The
purpose of this review is to determine (1) whether substantial evidence exists in the record to
support the Commissioner's decision, and (2) whether any legal errors were committed in the
process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept
as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different

conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the

Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985)

(*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484

F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by

proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

>(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

>(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

>(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

>(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

>(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ improperly evaluated the opinions of treating physician Dr. Cox; (2) the ALJ improperly evaluated the credibility of Plaintiff's complaints; (3) the ALJ improperly evaluated Plaintiff's mental impairments; and (4) Plaintiff was never sent for a physical consultative examination.  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the

alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Opinions of Dr. Cox**

Plaintiff argues that the ALJ erred in evaluating the opinions of treating physician Dr. Cox. Docket No. 15. Specifically, Plaintiff argues that the ALJ erred in: (1) stating that Dr. Cox did not submit any relevant evidence to support his opinion that Plaintiff is unable to work, and in consequently according this opinion little weight; and (2) according greater weight to the physical residual functional capacity assessment of Dr. Walwyn than to the medical source statement of Dr. Cox.[4] *Id.*

---

[4] In his brief, Plaintiff argues that the ALJ should have accorded more weight to the opinion of Dr. Cox than to that of Dr. Walwyn, stating: "Surely the opinion of Dr. Cox would be given controlling weight under the circumstances of this case." Docket No. 15. Plaintiff does not specify to which "opinion of Dr. Cox" he refers. The undersigned presumes that Plaintiff

Defendant responds that the ALJ properly evaluated the opinions of Dr. Cox. Docket No. 16. Specifically, Defendant argues that: (1) "[t]he ALJ correctly observed that [Dr. Cox's treatment] records do not support his opinion" that Plaintiff is unable to work; (2) that Dr. Cox's opinion that Plaintiff is unable to work is not a medical opinion for Social Security purposes and thus "is not entitled to any particular weight"; and (3) "[t]he ALJ properly gave significant weight to the RFC assessments of Dr. Walwyn and Dr. Allison" over the findings in what "appears to be a functional assessment by Dr. Cox," as the findings of Drs. Walwyn and Allison "are consistent with the medical evidence of record." *Id.*

Dr. Cox treated Plaintiff extensively for many years. *See, e.g.*, TR 248-280, 334-343. On February 4, 2009, Dr. Cox indicated on a form from the State of Tennessee Department of Human Services that Plaintiff "is physically or mentally unfit for employment or training for employment" and "will be unable to work or participate in training" indefinitely. TR 390. The ALJ accorded "little weight" to this assessment. TR 44. In so doing, the ALJ explained, "Although Dr. Cox is a treating physician, he did not submit any relevant evidence to support this opinion, particularly medical signs and/or laboratory findings." *Id.* The ALJ continued, "Without supporting documentation and explanations for this opinion, it is difficult to assess how he reached his conclusion." *Id.*

In response to the ALJ's assertion that Dr. Cox did not submit any relevant evidence to support his opinion that Plaintiff is unable to work, Plaintiff argues that "there are 171 pages of

_____

refers to the unsigned medical source statement in the record (TR 391-393) (which Plaintiff in his brief assumes to be the statement of Dr. Cox), as this medical source statement directly contradicts the only opinion in the record from Dr. Walwyn. *Compare* TR 306-313 *with* TR 391-393.

medical reports from Dr. Cox along with several diagnostic studies contained in the record which definitely addresses [Plaintiff's] medical condition." Docket No. 15. Plaintiff is correct in his assertion that the record contains many pages of treatment notes and medical reports from Dr. Cox that address Plaintiff's medical condition. As the ALJ noted, however, these treatment notes and medical reports do not support Dr. Cox's February 4, 2009 opinion that Plaintiff is unable to work. TR 44. To the contrary, Dr. Cox noted on numerous occasions that Plaintiff had normal strength and motor function, and was able to exercise. *See, e.g.*, TR 462, 476, 495, 516-517, 536-537, 557, 561.

Dr. Cox's opinion that Plaintiff is unable to work is further contradicted by other evidence in the record. Specifically, the ALJ noted that "[a] CT scan of the lumbar spine performed on April 6, 2006 showed mild narrowing of the disc space at L4 - 5" and "an x-ray, performed on December 14, 2006 was similarly negative." TR 39, 215, 228. The ALJ also noted that Dr. Leone, Plaintiff's treating physician at The Pain Management Group, "opined that objective testing did not warrant the use of narcotic pain medication." TR 39, 470.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Cox treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions.  As has been noted, however, Dr. Cox's opinion that Plaintiff is unable to work contradicts other substantial evidence in the record, including his own treatment notes.  As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent

with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id*; 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Cox's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

Furthermore, Dr. Cox's opinion that Plaintiff is unable to work is not a medical opinion for the purposes of the Social Security Act and Regulations, and thus does not merit the same deference as a medical opinion. As the Regulations state, "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e). Such opinions include "[a] statement by a medical source that you are 'disabled' or 'unable to work.'" 20 C.F.R. § 404.1527(e)(1). Opinions on issues reserved to the Commissioner will not be accorded any special significance. 20 C.F.R. § 404.1527(e)(3). Dr. Cox's opinion that Plaintiff "is physically or mentally unfit for employment or training" (TR 390) is an issue reserved to the Commissioner; accordingly, it merits no special significance.

Plaintiff also argues that the ALJ should have accorded controlling weight to the medical source statement of Dr. Cox. Docket No. 15. With regard to the medical source statement at issue, the ALJ noted that "little weight is given to this opinion; no signature exists on the assessment, so it is uncertain who completed the form and no objective testing was submitted to validate these findings."[5] TR 44. Because the medical source statement was unsigned and no

_____

[5] With regard to the lack of signature on this medical source statement, Plaintiff asserts that "[t]he Plaintiff's attorney in his Brief dated 6-2-09 sent the original Medical Source Statement of Dr. Cox and sent all four pages of the report. . . .A Social Security Administration

12

objective testing was submitted with it, the ALJ properly accorded it little weight.

In contrast, the ALJ accorded "significant weight" to the opinions expressed in Dr. Walwyn's March 19, 2007 physical residual functional capacity assessment. TR 45. In that assessment, Dr. Walwyn opined that Plaintiff was capable of occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. TR 307. Dr. Walwyn further opined that Plaintiff was unlimited in pushing and pulling activities "other than as shown for lift and/or carry"; could frequently perform all postural activities, including climbing, balancing, stooping, kneeling, crouching, and crawling; and had no manipulative, visual, or communicative limitations. TR 307-310. Finally, Dr. Walwyn opined that Plaintiff had no environmental limitations, except the need to avoid concentrated exposure to extreme heat and cold. TR 310.

The ALJ explained that he accorded Dr. Walwyn's opinions significant weight because "they are based on a review of the entire record, the findings are consistent with the evidence and the physicians are familiar with the Social Security Administration regulations." TR 45. Specifically, the ALJ noted that "[i]maging of the claimant's spine from 2006 and 2008 revealed only mild narrowing of the disc space." TR 42, 215, 388. The ALJ further explained that:

An examination showed the claimant had a normal range of motion

_____

office worker failed to place page 4 in the Administrative Record." Docket No. 15. Plaintiff seems to suggest with this assertion that, had the last page of this medical source statement been included, the medical source statement would be identifiable as that of Dr. Cox, and that the identification would have changed the ALJ's opinion. As has been discussed however, Dr. Cox's opinion was contradicted by other evidence of record, including his own treatment notes. Accordingly, the mere attribution of the medical source statement to Dr. Cox would not likely have altered the ALJ's opinion.

without joint crepitus or pain and the musculoskeletal examination was fairly normal. His gait was considered within normal limits and the claimant could participate in an exercise program. . . . Examinations by his treating heart physician also showed his back and spine were "grossly normal.". . . Although the claimant established care with R. Alex Case, M.D., at Tennessee Heart, in May 2007 no significant complaints concerning his heart condition were made and he was advised to follow up with Vanderbilt University medical center.

TR 42-43, 344-348; *see, e.g.*, TR 462. The ALJ also noted that Plaintiff's treating physician at the pain clinic, Dr. Leone, "specifically opined that the claimant needed to establish a 'legitimate medical purpose' before being prescribed opioid therapy." TR 43, 470. The ALJ further stated:

[M]any of the claimant's other complaints cannot be explained by objective testing, indicating that they are relatively mild. For instance, a CT head scan was performed due to his paresthesias symptoms; however, it was relatively normal. Similarly, a CT scan and x-ray of the cervical spine were unremarkable. . . . Concerning his chest pain, a CT of the abdomen did not reveal any significant findings attributable to chest pain.

TR 43, 217, 218, 295. The ALJ observed that, "according to the evidence, the claimant can perform a full range of daily activities. . . ." TR 43; *see, e.g.*, TR 135-139, 243. Finally, the ALJ noted that Dr. Allison, who also completed a physical residual functional capacity assessment of Plaintiff, "confirmed Dr. Walwyn's findings that the claimant could perform light work." TR 45, 380-386.

Pursuant to 20 C.F.R. § 416.927(d)(4), the ALJ found that Dr. Walwyn's opinions were consistent with the record as a whole and thus accorded them significant weight. This determination was proper. Accordingly, Plaintiff's argument fails.

**2. Evaluation of Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in assessing his credibility. Docket No. 15.

Specifically, Plaintiff argues that the ALJ "failed to properly evaluate the Plaintiff's complaints of pain pursuant to SSR 96-6P." *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility, and that "Plaintiff's complaints of pain were at odds with the medical evidence and his activities." Docket No. 16.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(3)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, Plaintiff testified that his back and his nerves were his worst problems that kept him from working. TR 10. Plaintiff stated that his back pain occurred daily. TR 12. Describing a "bad day" for his back pain, Plaintiff testified:

> Really can't get around hardly, you know. I mean, I lay around
> quite a bit. And I usually don't get out of the house when it's
> hurting real bad.

TR 13. Plaintiff also alleged chest pain that occurred at least once a day: "I can be sitting there and take a deep breath and it's like somebody stabs me in the heart." TR 10.

The ALJ found that, "[t]he claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." TR 42. Specifically, the ALJ articulated that, "[t]he claimant's subjective complaints are not reasonably consistent with the medical evidence"; "many of the claimant's . .

. complaints cannot be explained by objective testing"; and "the claimant can perform a full range of daily activities which is inconsistent with the nature, severity, and subjective complaints of the claimant." TR 42-43.

When considering the credibility of Plaintiff's allegations, the ALJ considered the objective medical evidence of record. Specifically, the ALJ considered 2006 and 2008 CT scans of Plaintiff's spine. TR 42. These scans showed only mild narrowing of the disc space and a small extruded herniated disc paracentrally on the left. TR 42, 215, 388. The ALJ further noted that, "[e]xaminations by his treating heart physician also showed his back and spine were 'grossly normal.'" TR 43, 347. Finally, the ALJ noted that:

> a CT head scan was performed due to his paresthesias symptoms; however, it was relatively normal. Similarly, a CT scan and x-ray of the cervical spine were unremarkable. . . .Concerning his chest pain, a CT of the abdomen did not reveal any significant findings attributable to chest pain.

TR 43, 217, 218, 295.

Pursuant to 20 C.F.R. § 404.1529(c)(3)(iv)-(vi), the ALJ considered Plaintiff's medication, treatment, and other measures used to relieve pain when he made his determination regarding Plaintiff's credibility. The ALJ noted that, "[a]lthough the claimant complained of 'moderately severe' pain, it was relieved by 'rest.'" TR 42, 335. The ALJ further noted that Plaintiff testified at his hearing that he took no medication for his heart problems other than a daily aspirin "to thin [his] blood." TR 10, 43. Finally, the ALJ noted that "the claimant was referred to a pain clinic due to his reported back pain but he was denied opioids." TR 43, 470.

Pursuant to 20 C.F.R. § 404.1529(c)(3)(i), the ALJ also considered Plaintiff's daily activities when he made his determination regarding Plaintiff's credibility. The ALJ noted that

Plaintiff's daily activities "do not reflect the disabling limitations alleged." TR 43. Specifically, Dr. Garriss's treatment notes from December 7, 2006 indicate that Plaintiff was "digging a ditch for a septic tank" when his arms, hands, and legs became numb. TR 43, 194. December 13, 2006 treatment notes reflect that for "fulfillment," Plaintiff would spend time with his girlfriend, play X-box, ride four-wheelers, and use computers. TR 43, 243. Plaintiff also reported in a function report that he was able to feed and water his dogs, prepare meals, and perform light housekeeping. TR 43, 135-139.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that, "[t]he claimant's medically determinable impairments could reasonably be expected to cause some of

the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." TR 42. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. Evaluation of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in evaluating his mental impairments. Docket No. 15. Specifically, Plaintiff argues that, "Judge Williams stated that the Plaintiff's symptoms were moderate in severity," but that, "the Plaintiff's depression and anxiety is not moderate since he had documented GAF's of 44." *Id.* Plaintiff further argues that, "the Judge improperly relied on the opinion evidence of Ms. Blazina and other State Agency Consultants in regards to Plaintiff's mental health status." *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's mental impairments. Docket No. 16. Specifically, Defendant argues that the evidence, including the assessments of Drs. Blazina, Meneese, and Joslin, "supports the ALJ's finding that the Plaintiff has only mild to moderate limitations caused by depression and anxiety." *Id.*

With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff had severe depression and severe anxiety. TR 38. The ALJ further stated:

> Several additional diagnoses appear in the counseling treatment
> records pertaining to the claimant's mental limitations; attention

> deficit disorder and personality disorder; however, these are
> primarily based on the claimant's self-reporting. . . . A severe
> impairment must have more than a slight abnormality and has
> more than a minimal effect on the ability to do basic physical or
> mental work activities. Due to these impairments being based
> primarily on subjective reporting and limited treatment appearing
> in the record, I find the claimant's personality disorder impairment
> nonsevere.

TR 40. The ALJ found that Plaintiff was limited to performing "simple, repetitive work, in low stress jobs," and "jobs with superficial and minimal contact with others." TR 42.

With regard to Plaintiff's mental impairments, Plaintiff asserts that the ALJ erred in stating that Plaintiff's symptoms were moderate because Plaintiff had documented GAF's of 44 and Plaintiff's GAF's of 44 contradict the report of Linda Blazina. Docket No. 15. Plaintiff asserts, therefore, that the ALJ "improperly relied on the opinion evidence of Ms. Blazina and other State Agency Consultants in regards to Plaintiff's mental health status." *Id.*

The ALJ, in his opinion, detailed the findings from Dr. Blazina's April 17, 2007 psychological evaluation of Plaintiff:

> A mental status examination showed that the claimant was alert
> and fully cooperative; his memory and recall were considered
> relatively normal. The diagnoses included anxiety disorder, not
> otherwise specified and major depressive disorder, single episode,
> moderate. A GAF score of 65 was assigned signifying only mild
> symptoms.
> In sum, Dr. Blazina opined that the claimant's intellectual
> functioning was in the low-average range. During the interview
> the claimant appeared restless, anxious and mildly depressed,
> which was consistent with his reporting. No significant memory
> impairment was reported. He did, however, have some difficulty
> with his attention and concentration skills. It was felt by Dr.
> Blazina that the claimant's stress tolerance would likely be below
> average. In her assessment of the claimant's ability to perform
> work-related activities, she opined that the claimant's ability to
> understand and remember did not appear to be impaired. His
> ability to sustain his concentration and persistence appeared only

mildly to moderately impaired due to his anxiety and depression.
Exhibits 6F/1-5 [TR 314-319].

TR 45. The ALJ then explained the weight he accorded to Dr. Blazina's opinion:

> I give significant weight to this opinion because the objective
> mental status examination was relatively normal and on this basis,
> Dr. Blazina found the claimant would have relatively few work
> limitations. I have included the recommended cognitive and social
> limitations in the residual functional capacity, above. Dr.
> Blazina's findings are also consistent with the evidence and
> supported by the state, discussed below.

*Id.*

The ALJ also considered the opinions of William Meneese, Ph.D., and Rebecca Joslin,

Ed.D.. TR 45-46. Regarding Dr. Meneese's May 18, 2007 assessment, the ALJ stated:

> Based on a review of the evidence, Dr. Meneese opined that there
> was no documented history of formal psychiatric treatment and the
> activities of daily living and field office observations did not
> indicate signs/symptoms of markedly disabling mental illness.
> Allegations of mental disability were not supported as great weight
> was given to the psychological evaluation from Dr. Blazina.
> Exhibits 7F/1-14 [TR 320-333].

TR 45. The ALJ then explained the weight he accorded to Dr. Meneese's opinion:

> I also weigh this opinion heavily. Dr. Meneese reviewed the entire
> record and he is familiar with the Social Security Administration
> regulations. However, I find, based on Dr. Blazina's diagnoses of
> depression and anxiety, and giving the claimant the benefit of the
> doubt, that depression and anxiety are severe impairments, as
> discussed above.

TR 45-46.

Regarding Ms. Joslin's July 25, 2007 assessment, the ALJ stated that Ms. Joslin:

> . . . found that the claimant had severe impairments of major
> depressive disorder, anxiety disorder and a personality disorder.
> Ms. Joslin noted that the claimant had few limitations with his
> activities of daily living, including performing personal care

> unassisted, caring for pets, shopping and managing money.
> Socially, he had some problems getting long [*sic*] with others. He
> also had some difficulty concentrating. She noted that the claimant
> had an unresolved mood disorder due to the death of his mother
> when the claimant was fourteen. Ms. Joslin also pointed out that
> the claimant had difficulty taking prescribed medication for his
> anxiety impairment due to his heart condition. Based on the
> evidence in the record, she found moderate limitations due to
> mental impairments. Exhibits 11F/1-13 [TR 361-374].

TR 46. The ALJ then explained the weight he accorded to Ms. Joslin's opinion:

> I also weight [*sic*] this assessment heavily. Ms. Joslin's opinion
> showed that the claimant could perform his activities of daily
> living with few limitations, his social functioning was deemed
> moderately limited and he had "some" difficulty with
> concentration. These findings are consistent with the evidence in
> the record.

*Id.*

As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here includes a number of evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination regarding Plaintiff's mental impairments.[6]

---

[6] As previously noted, the only non-physical limitations the ALJ included in Plaintiff's residual functional capacity were that "[t]he claimant can perform simple, repetitive work, in low

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). The ALJ's decision was properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

## 4. Physical Consultative Examination

Plaintiff asserts that he "was never sent for a Physical Consultative Evaluation." Docket No. 15. Defendant responds that "there was no need for a physical CE in this case," and that Plaintiff "offers no reason why the ALJ" should have sent Plaintiff for a physical consultative evaluation." Docket No. 16.

Regarding consultative examinations, the Regulations state: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 404.1517. In the instant case, Plaintiff has not alleged that his medical sources have failed to provide the Social Security Administration with sufficient information to determine whether he is disabled. Furthermore, the record contains, *inter alia*, numerous pages of treatment notes from Dr. Cox, physical residual functional capacity assessments from Drs. Walwyn and Allison, and results of various medical tests and assessments administered to Plaintiff. *See, e.g.*, TR 214-219, 220-247, 248-305, 306-313, 379-386, 460-562.

---

stress jobs," and "[t]he claimant can perform jobs with superficial and minimal contact with others." TR 42.

Plaintiff has failed to explain why a physical consultative examination is necessary. The ALJ properly relied on the abundance of evidence in the record regarding Plaintiff's physical condition in reaching his determination regarding Plaintiff's disability.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge